### [No. 1911.]
### HART v. GREEN ET AL.

1. CONTINUANCE—ABSENT WITNESS—DILIGENCE.

It was not error to deny an application for continuance which alleged that applicant could not obtain the attendance of certain witnesses but which failed to disclose why their attendance could not be obtained or their depositions procured, and which made no showing of diligence, to procure the attendance or depositions of the witnesses.

2. PARTNERSHIP—REWARDS.

The fact that several parties acted together to discover, arrest and convict certain persons for whose arrest and conviction a reward was offered is not of itself sufficient to support an inference of partnership so that an agreement by one of the several parties to divide the reward would bind the others.

3. REWARDS—PRACTICE—DIRECTING VERDICT.

In an action by several parties to recover a reward offered by a county, where the county paid the reward into court and substituted another party, who claimed half the reward, as defendant, and the evidence showed an agreement by one of the plaintiffs to divide the

reward with defendant, although the agreement was not binding on the other plaintiffs, defendant would be entitled to part of the amount going to the plaintiff who made the agreement, and if the evidence was otherwise sufficient to sustain a recovery it was error to direct a verdict for plaintiffs.

4. SAME—EVIDENCE.

In an action against a county for a reward offered for the arrest and conviction of certain parties where the county paid the reward into court and substituted another party as defendant who claimed half of the reward by reason of an agreement with plaintiffs whereby he was to furnish plaintiffs the name of a party who could give information which would lead to the detection of the guilty parties for which he was to receive half the reward, and the evidence showed that he gave plaintiffs the name and address of a party, but there was no evidence that the person whose name was given to plaintiffs knew anything about the matter or furnished any information to plaintiffs that led to the arrest of the criminals, or in any way assisted in their conviction, the evidence was insufficient to sustain defendant's claim and the jury was properly directed to return a verdict for plaintiffs.

5. INSTRUCTIONS—DIRECTING VERDICT.

Where upon the evidence a verdict was properly directed for plaintiffs, the defendant cannot complain of a refusal to give instructions asked.

*Appeal from the District Court of Las Animas County.*

Mr. W. B. MORGAN, for appellant.

Mr. JAS. McKEOUGH, Jr., and Mr. A. J. ABBOTT, for appellees.

THOMSON, J.

In April or May, 1896, two deputy sheriffs of Las Animas county were murdered by some then unknown person or persons. On the 8th day of July, 1896, the board of commissioners of that county took the action in relation to the murder, evidenced by the following copy of the record of its proceedings: " On motion the board offers a reward of $500 for the arrest and conviction of the murderers of deputy sheriffs Green and Kelly, supposed to have been murdered on or

about May, 1896, in Las Animas county, Colorado." Subsequently, the murderers were arrested and convicted. After their conviction, and on the 23d day of December, 1897, the appellees brought suit against the county to recover the amount of the reward, alleging that they had secured the arrest and conviction of the guilty parties. The county answered, admitting all the allegations of the complaint, except that the plaintiffs secured the arrest and conviction of the malefactors; and, as to that, averring want of knowledge. The answer also alleged that the appellant, John S. Hart, had notified the board, in writing, that he claimed one half of the reward by virtue of a contract with Wilson Elliott, one of the appellees; and prayed an order substituting Hart as defendant in place of the board, upon the payment by the latter of the $500 into court. The order prayed was made and entered accordingly.

The substituted defendant then answered the complaint. When his answer was filed, or what it contained, the abstract of the record does not disclose; but we find an amended answer in the abstract, which was filed on the 5th day of March, 1898. This answer averred that after the offer of the reward, and before any arrest was made, an agreement was entered into between himself and the plaintiffs, by which, in consideration of his co-operation with the plaintiffs in accomplishing the arrest and conviction of the murderers, he should have one half of the reward, and the plaintiffs the other half. This answer was denied by a replication. When the evidence was in, the court directed a verdict for the plaintiffs. It was so returned, and judgment was entered accordingly. The defendant appeals.

The defendant complains of a ruling of the court denying an application for a continuance made by him on the 7th day of March, 1898. He stated in his application, as it is set forth in the abstract, that he could not obtain the attendance of two witnesses, Jose S. Tafoya and Macedonia Archuleta; but he offered no reason why he could not obtain their attendance, or procure their depositions. We are not advised

when his original answer was filed, or when he was brought
into court pursuant to the order substituting him as defend-
ant; so that there is nothing in the abstract to indicate that
he had not ample opportunity to summon those witnesses,
if they were in the county, or take their testimony by way
of deposition if they were not. We find nothing to indicate
that he exercised the smallest diligence, or made any effort
whatever, to procure the attendance or testimony of the wit-
nesses. There was no error in rejecting that application.

The following is the language of one of the assignments
of error: "In refusing the cross-examination of the witness
Elliott as to what appellant did towards the arrest and con-
viction in controversy." We find nothing in the evidence,
as the abstract gives it, which that assignment will fit. It
probably has reference to the following occurrence in the
cross-examination of Elliott: "How many times did you con-
fer with Hart prior to the conviction of these parties in ref-
erence to the arrest and conviction of the murderers? Ob-
jected to as immaterial; sustained." Elliott was not ques-
tioned concerning what appellant did; and the court's ruling
on the question that was propounded, is not assigned for
error.

The only troublesome question in the case arises out of
the direction of a verdict by the court. If, by contract with
the plaintiffs, in consideration of his assistance in securing
the arrest and conviction of the murderers, he was to receive
one half of the reward; and if he did furnish assistance in
bringing about that result, he had a right to judgment in ac-
cordance with the terms of the agreement. The only con-
tract which the evidence disclosed was one, not between the
defendant and the plaintiffs, but between the defendant and
the plaintiff, Elliott. That contract was that if the defend-
ant should furnish Elliott with the name of a party who could
inform him where the bodies of Green and Kelly were, or who
were the murderers, and such information should lead to the
arrest and conviction of the murderers, the defendant should
have one half of the reward. There was no evidence that

the plaintiffs were so associated together that all would be bound by the act of one, or that Elliott had authority to speak for any person but himself.   The complaint alleges that the plaintiffs jointly and severally labored for the discovery of the person or persons who committed the crime, and that one of their purposes was to obtain the reward, and from this allegation the defendant infers a partnership; but a partnership is not joint and several, and moreover, it was essential to any reasonable prospect of success that the parties in pursuit should operate together, and in harmony.   From the mere fact that they did so, no inference of an association in the nature of a partnership, could be drawn ; and unless there was some such compact, Elliott's contract bound himself alone. There was no evidence that the plaintiffs operated in pursuance of any partnership agreement.   However, if there was any tangible evidence, that the requirements, in so far as the defendant was concerned, of the contract between himself and Elliott, had been satisfied, he would have been, at least, entitled to one half of Elliott's share of the reward, and it was error to direct a verdict.   But to entitle him to any sum, he must have furnished Elliott with the name of a party who could inform him where the bodies of Green and Kelly were, or who were the murderers ; and such information must have led to the arrest and conviction of the criminals.   Now, we find no evidence in the abstract that the information which the defendant imparted to Elliott was of any value.   We are unable to discover wherein the information, if any was given, produced any results ; or wherein there was any connection between the information and the arrest and conviction.   The defendant gave Mr. Elliott the name of Jose Selistina Tafoya as a man who knew who one of the murderers was ; and also, said something about two other men,—Archuleta and Romero.   The following is what the defendant testified on the subject: "I did not say that I could tell Mr. Elliott who one of the murderers was.   I said I could tell him a man that knew.   I told him I did not want to disclose what I knew unless I had a certainty that I would get a part

of the reward. I told him right there who the party was. I told him Jose Selistina Tafoya; told him where Tafoya could be found. I located Tafoya by means of letters passing through the post office. I think I had fulfilled the conditions of the contract I made with Elliott when I told him about Tafoya. I never gave him the name of any other person other than Tafoya, but we talked in the way of conversation about Archuleta and Romero." What, if anything, Tafoya knew, what if anything, he communicated, what, if any, arrest was made as the result of his communication, what influence, if any, himself or his knowledge had in bringing about the conviction, nowhere appears. And there is the same absence of evidence respecting Archuleta and Romero, and the figure, if any, they cut in the proceedings. We have looked in vain, through the abstract which the defendant has furnished us, and which, it is presumed, contains everything in the way of proof, that was favorable to himself, for evidence of facts which would entitle him to a judgment. Not only was the concurrence of the several matters we have mentioned, not proven, but there was no tangible evidence of any one of them. In our opinion, there was nothing for the jury to pass upon; and, in directing a verdict, the court was only performing its duty. The defendant complains of the refusal of instructions requested by him; but as the only instruction that was proper, upon the evidence, was one directing a verdict for the plaintiffs, it would have been error to give the defendant's instructions, no matter what they contained.

Let the judgment be affirmed.

*Affirmed.*